UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MARY WHITENER AND RANDY WHITENER, | § § | |
| Plaintiffs, | § § | |
| v. | § | NO. 3:06-CV-1526-AH |
| NAVARRO COUNTY and ELMER TANNER, | § § § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

In this action, Plaintiffs Mary and Randy Whitener bring suit under 42 U.S.C.A. § 1983 ("section 1983") against Defendants Elmer Tanner and Navarro County arising from the mistaken execution of a "no knock" search warrant on Plaintiffs' residence located at 1511 Cherry Street in Corsicana, Texas. Pursuant to the written consent of the parties and the District Court's order of transfer of November 7, 2006, currently before the court is Defendants' Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56(b). For the reasons set forth below, Defendants' motion is granted in part and denied in part.

I.  **Summary Judgment Standard**

To prevail on a motion for summary judgment, the moving party has the initial burden of showing there is no genuine issue of any material fact and judgment should be entered as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 2509-10 (1986). The materiality of facts is determined by substantive law. *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510. An issue is "material" if it involves a fact that may affect the outcome of the suit under governing law. *See Burgos v. Southwestern Bell Telephone Co.*, 20 F.3d 633,

635 (5th Cir. 1994). If the moving party presents evidence tending to show the absence of any genuine issue of fact, the opposing party must then identify specific evidence in the record which establishes the existence of one or more issues of fact, i.e. a non-movant may not merely rely on his or her pleadings. *See Anderson*, 477 U.S. at 256-57, 106 S. Ct. at 2514; *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87, 106 S. Ct. 1348, 1355-56 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). In addition, neither conclusory allegations nor hearsay statements are competent evidence sufficient to defeat a motion for summary judgment. *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir.), *cert. denied*, 506 U.S. 825, 113 S. Ct. 82 (1992). In analyzing the competent evidence proffered by the parties, the facts and the inferences to be drawn are viewed in the light most favorable to the non-movants. *Herrera v. Millsap*, 862 F.2d 1157, 1159 (5th Cir. 1989).

**II.     Factual Background**

The following facts are either agreed to or are not in dispute:

On June 7, 2006, Sgt. Stan Farmer, a deputy sheriff of Navarro County received information from a confidential source (CS) that Kevin Hill, a white male, and Teresa McCain, a white female, possessed a quantity of illegal drugs at a house located at 1507 Cherry Street in Corsicana, Texas.

In anticipation of obtaining a search warrant for 1507 Cherry, Farmer contacted Defendant Elmer Tanner, a captain with the Navarro County Sheriff's Office, and requested Tanner's assistance in executing the warrant. Thereafter, Tanner met with the CS at the sheriff's office. The CS provided a hand drawn diagram of 1507 Cherry Street and informed Defendant Tanner that the Caucasian male suspect was frequently in the backyard of the residence and

would flee if he detected the deputies' presence. Defendant Tanner and Deputy Michael Wolver then conducted surveillance of the residence at 1507 Cherry Street. The officers drove by the front of the house, drove around the corner of Cherry Street and 24th and parked in a garage at that intersection. They walked down the alley behind the houses on Cherry Street. As they walked down the alley, Defendant Tanner and Deputy Wolver observed a Caucasian male in the backyard of what they believed to be 1507 Cherry Street. The officers returned to their vehicle and drove back to the sheriff's office.

Defendant Tanner conducted a pre-execution briefing attended by seven members of the sheriff's office whom he selected to participate in execution of the warrant. The officers discussed the residence located at 1507 Cherry, noting that it was the second house from the intersection of Cherry and 24th, describing the structure of the premises, and relating the fact that officers had received previous intelligence that the suspects may be armed. They decided to enter 1507 Cherry from the front of the house and to station deputies in the alley behind the residence to prevent the suspects from fleeing from the back of the house. The officers left the sheriff's office in a single vehicle and parked in a large garage adjacent to the intersection of Cherry and 24th.

Upon the facts asserted in the affidavit sworn by Sgt. Farmer, a state magistrate in Navarro County issued a warrant which authorized a search of 1507 Cherry and the arrest of Teresa [sic] McKain and Kevin Hill.

Defendant Tanner and two other deputies walked down the alley to the rear of what they believed to be 1507 Cherry, to see if the suspects were in the backyard. However, in fact, the

3

officers approached the Whiteners' residence, 1511 Cherry, the third house from the corner.[1]

The deputies observed a Caucasian male (Mr. Whitener) in the back yard and shortly thereafter, a Caucasian female (Mrs. Whitener) exiting the residence and walking into the backyard. The Whiteners then entered a storage building in their backyard. Defendant Tanner, believing them to be the suspects named in the warrant, instructed one of his officers to go back to the large garage and to tell the other officers that they would be entering the residence from the backyard, rather than from the front as discussed in their earlier briefing.

Defendant Tanner and the other deputies then crossed over a fence to Plaintiffs' backyard and approached the storage building. Defendant Tanner and another deputy stood on either side of the doorway.

From the point that the deputies entered Plaintiffs' backyard, the parties' versions of the facts diverge. Consistent with the requirement that the facts be viewed in the light most favorable to a non-movant in ruling on a motion for summary judgment, the court accepts as true Randy Whitener's version of his arrest as related in his affidavit and the excerpts from his deposition.

---

[1] There is a difference of opinion as to whether Defendant Tanner and the others' view was obstructed when they concluded that Plaintiffs' house was the second house rather than the third house from the intersection of Cherry Street and North 24th. Compare Defendants' Appendix, Exh. 11, Affidavit of Michael Wolver, at p. 178 to Plaintiffs' Appendix, Affidavit of Mary Whitener, at p. 198 ¶ 13. Regardless of whether the deputies failed to correctly determine that Plaintiffs' residence was the third house from the intersection due to weather conditions, time of day and/or obstructed view or due to the deputies' negligence, the opposing views do not present a genuine issue of material fact since it is conceded that Plaintiffs' residence curtilege was entered in error.

As Mr. Whitener exited the storage building, Deputy Andrews[2] confronted him, shining a flashlight in his eyes, and grabbed him by the shoulder, spinning him around and taking him to the floor on his knees. Andrews landed on Whitener's back as he hit the floor and Mr. Whitener screamed out in pain. He told Andrews that he could not put his head all the way on the floor due to his back injury. Whitener stated that they must have the wrong house to which Andrews responded that he should "quit resisting" and forced Whitener's head to the ground, which produced a knot and a bruise on his head. Whitener also stated that Andrews placed a gun to his temple.

At the same time, Defendant Tanner, with handgun drawn and pointing in the direction of Mrs. Whitener, and other deputies rushed into the storage building shouting for everyone to "get down, get down." Mrs. Whitener states that Defendant Tanner pointed his gun directly at her face, which he denies. Mrs. Whitener fell back into a pile of boxes. She asked the deputies "what was going on" and "if they were at the right house." Observing the deputy forcing Mr. Whitener to the ground, Mrs. Whitener screamed at the officers that her husband was recovering from a back injury.

Both plaintiffs were handcuffed, and, after the deputies helped Plaintiffs to their feet, Defendant Tanner informed the Whiteners that the officers were from the Narcotics Unit of the Navarro County Sheriff's Office and were there pursuant to a warrant to search for and seize illegal drugs. Defendant Tanner also informed Plaintiffs that a deputy was searching their house

---

[2] The summary judgment materials submitted by Plaintiffs do not identify the deputy who accosted and handcuffed Mr. Whitener. However, as evidenced by his deposition testimony, it is undisputed that the deputy who effected Mr. Whitener's arrest was Detective Clint Andrews. *See* Defendants' Appendix at 113-117.

5

at that time.

A deputy then approached the storage building and signaled for Defendant Tanner. Mrs. Whitener heard Defendant Tanner tell the officer to "jump the fence." Mrs. Whitener asked Defendant Tanner and then another deputy if they were at the wrong house. Defendant Tanner then left the storage building and walked to the front of Plaintiffs' residence and verified that the officers were, in fact, at 1511 Cherry and not at the residence described in the warrant.

Plaintiffs offer evidence that, upon returning to the storage building, Defendant Tanner did not immediately direct the plaintiffs' handcuffs to be removed, and continued to ask Plaintiffs questions for several minutes about their affiliation with their neighbors at 1507 Cherry, the actual suspects named in the warrant. Defendant Tanner then asked Plaintiffs their names and then directed Sgt. Farmer to remove their handcuffs but to stay with them. Deputy Farmer asked them if they had any marijuana to which Mr. Whitener replied that they did. When Defendant Tanner returned, he told Plaintiffs they would have to relinquish the marijuana and Mrs. Whitener led him into the house and surrendered approximately an ounce of marijuana. Defendant Tanner then walked through the residence with Mrs. Whitener to confirm that nothing had been damaged, apologized to Plaintiffs for executing the warrant on the wrong residence and left their home.

Prior to leaving Plaintiffs' residence, other deputies executed the warrant at 1507 Cherry, and arrested Teresa McCain and Kevin Hill for possession of methamphetamine.

Mr. Whitener claims injury to his back, as well as bruises, scrapes and cuts from his head being forced to the ground during the arrest. Mrs. Whitener claims that she received cuts and bruises and suffers from hypertension and depression as a result of the incident. Plaintiffs bring

6

claims against Defendant Tanner and Navarro County for these injuries under section 1983.

## III. Legal Standards and Analysis

### A. Elmer Tanner, Sued in His Individual Capacity

A state law enforcement officer may be held liable pursuant to section 1983 for his conduct which violates a clearly established constitutional right. *Harlow v. Fitzgerald*, 457 U.S. 800, 878, 102 S. t. 2727 (1982). However, respondeat superior does not apply in a section 1983 action and a supervisory official cannot be held liable for the acts or omissions of subordinates. *Bennett v. City of Slidell*, 728 F.2d 762, 767 (5th Cir. 1984) (en banc); *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 534 (5th Cir. 1997). In addition, a law enforcement official sued in his individual capacity is entitled to assert a defense of qualified immunity, as Defendant Tanner has in this action. It is these legal precepts which inform disposition of Plaintiffs' claims against him personally. Once a public official raises the defense of qualified immunity, the burden rests on the plaintiff to rebut it. *Pierce v. Smith*, 117 F.3d 866, 871-72 (5th Cir. 1997).

1. <u>Plaintiffs' claim of excessive force.</u> The right to be free from excessive force is a clearly established right under the Fourth Amendment prohibition against unreasonable seizures of the person. *Graham v. Connor*, 490 U.S. 386, 394, 109 S. Ct. 1865, 1871 (1989). To prevail on an excessive force claim, a plaintiff must establish: "(1) an injury; (2) which resulted directly and only from a use of force that was clearly excessive; and (3) the excessiveness of which was clearly unreasonable." *Freeman v. Gore*, 483 F.3d 404, 416 (5th Cir. 2007) (citing *Tarver v. City of Edna*, 410 F.3d 745, 751 (5th Cir. 2005)). Plaintiffs' excessive force claim is separate and distinct from their unlawful arrest claim and, therefore, the court must analyze the excessive force claim without regard to whether the search of their home was justified. *Freeman*, 483 F.3d

at 417.

    a.  <u>Randy Whitener</u>.  Mr. Whitener's excessive force claim against Defendant Tanner is without merit.  He offers no evidence that Defendant Tanner was involved in the acts causing his injury.  To the contrary, it is undisputed that it was another deputy, Clint Andrews, who restrained Mr. Whitener and forced his head down.  Defendant Tanner was not involved in restraining or handcuffing Mr. Whitener and, therefore, Mr. Whitener's injuries could not have resulted from any use of force by Defendant Tanner.  Moreover, since it is undisputed that the takedown and handcuffing of Mr. Whitener took place in a matter of seconds, the facts do not present a scenario in which a defendant law enforcement officer stood by while observing a fellow officer using excessive force on a section 1983 complainant.  As the record is viewed in the light most favorable to the plaintiff, Tanner was simultaneously engaged in effecting the arrest of Mary Whitener.

    b.  <u>Mary Whitener</u>.  It is undisputed that Tanner effected Mrs. Whitener's arrest and that he had his service pistol in his hand as he approached her, although it is disputed as to whether he was merely pointing the gun in her direction or directly at her head.  Moving backwards in the storage building, she fell or was pushed over some boxes on the floor and after being helped up by Tanner or another deputy, she was handcuffed.  She does not allege that she suffered any physical injury as a result of her arrest, although there is little doubt that the arrest and that of her husband was a traumatic experience.

Viewed in the light most favorable to her claim, it is assumed that Tanner was pointing his drawn weapon directly at her head as he advanced to effect her arrest.  Without deciding whether emotional distress alone constitutes an injury within the purview of the elements of an

8

excessive use of force claim, *see, e.g., Tarver*, 410 F.3d at 751; *but see Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001) (holding that a plaintiff's injury must be more than de minimis), the pointing of a weapon by a law enforcement official at the head of a person believed to be subject to an outstanding arrest warrant is insufficient to permit a rational trier of fact to find the official liable for the use of excessive force – i.e., Mrs. Whitener cannot make a colorable showing that Tanner was guilty of using excessive force. However, even if it be assumed *arguendo* that summary judgment in his favor is not otherwise appropriate, that does not end the court's inquiry in light of his assertion of qualified immunity.

Specifically, "qualified immunity can apply in the event [a] mistaken belief was reasonable . . . . Excessive force claims . . . are evaluated for objective reasonableness based upon the information the officer had when the conduct occurred." *Saucier v. Katz*, 533 U.S. 194, 206-07, 121 S. Ct. 2151 (2001). Notwithstanding the mistaken belief which Tanner and the other deputies had that they were in the alley behind the house identified in the warrant, that is 1507 Cherry, and that the white male and female which they observed in the backyard were the individuals named in the warrant, as a matter of law it cannot be said that the display of a weapon when attempting to arrest a person believed to have been named in an arrest warrant for possession of illegal drugs constituted the use of excessive force.

  2. <u>Unlawful search</u>. It is clear that Elmer Tanner and the deputies who accompanied him into the alley were in error when they attempted to execute the search warrant for 1507 Cherry Street at Plaintiffs' residence next door. Even assuming that negligence[3] on the part of

---

[3] *See* note 1, *supra*; *see also Daniels v. Williams*, 474 U.S. 327, 328, 106 S. Ct. 662, 663 (1986) (mere negligence is not actionable under section 1983); *Oliver v. Collins*, 914 F.2d 56, 60 (5th Cir. 1990).

9

Tanner and/or the other deputies in the alley contributed to the mistake, under the Supreme Court's decision in *Maryland v. Garrison*, 480 U.S. 79, 88, 107 S. Ct. 1013 (1987) and the law of this circuit, the Fourth Amendment is not violated merely due to law enforcement officers' execution of a search warrant on the wrong address. *See Simmons v. City of Paris*, 378 F.3d 476, 479 (5th Cir. 2004). However, as soon as officers determine they acted in error, they must immediately depart the premises. *Id*. at 480-81 and n. 2.

In the instant case, Plaintiffs have proffered evidence that Defendant Tanner learned from participating deputies on the street-side of the residences that Plaintiffs' residence was not 1507 Cherry and that Tanner returned to the backyard and ordered that their handcuffs be removed, but that the deputies remain with Plaintiffs. It is undisputed that at sometime prior to a walk through of the residence to check for any possible damage that Mr. Whitener admitted to possessing marijuana in the residence which was retrieved and taken by a member of the warrant execution team. It is unclear whether his admission was spontaneous or in response to questioning without the benefit of a *Miranda* warning. It is uncontested that the Whiteners were questioned about the residents of 1507 Cherry prior to the time the deputies left their home. Although Plaintiffs' handcuffs were removed at Tanner's instructions, a fact question remains as to whether the seizure of their persons continued. *See Graham*, 490 U.S. at 395 n. 10, 109 S. Ct. at 1871. Likewise, an issue of fact remains as to the duration of the search party's presence at their residence after it became known that it was not the premises named in the warrant.

While no respondeat superior liability attaches to supervisors for the conduct of subordinates, section 1983 liability may be found where there is a "sufficient causal connection" between the supervisor's conduct and the constitutional violation. *See Evett v. DETNTFF*, 330

F.3d 681, 689 (5th Cir. 2003). Construing the facts in the light most favorable to Plaintiffs, the court finds that there are genuine issues of fact which preclude summary judgment in favor of Defendant Tanner on the question of whether personal liability exists following clear evidence that the warrant was erroneously executed on Plaintiffs and their residence.

      **B.     Claims Against Navarro County for Failure to Supervise or Train.**

Plaintiffs allege that Navarro County failed to adequately train the Navarro County Sheriff's Office deputies entitling them to damages. To succeed on this claim, Plaintiffs must show three things: (1) the county's training or hiring procedures were inadequate, (2) the county's policymaker was deliberately indifferent in adopting the hiring or training policy, and (3) the inadequate hiring or training policy directly caused the plaintiffs' injury. *Baker v. Putnal*, 75 F.3d 190, 200 (5th Cir. 1996).

Deliberate indifference requires a plaintiff to show more than mere negligence. *Conner v. Travis County*, 209 F.3d 794, 796 (5th Cir. 2000). A plaintiff must show that "in light of the duties assigned to specific officers or employees, the need for more or different training is obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *City of Canton v. Harris*, 489 U.S. 378, 390, 109 S. Ct. 1197, 1205 (1989). Proof of more than a single instance of lack of training causing a violation of constitutional rights is normally required before such lack of training constitutes deliberate indifference. *Snyder v. Trepagnier*, 142 F.3d 791, 798-99 (5th Cir. 1998). Plaintiffs must generally demonstrate at least a pattern of similar violations. *Id*. at 798. Furthermore, the inadequacy of training alleged must be obvious and obviously likely to result in a constitutional violation. *Snyder*, 142 F.3d at 799.

Plaintiffs have only presented evidence of this one instance and offer no evidence of similar incidents involving the use of excessive force or any unlawful search by employees of the Navarro County sheriff's office or by any deputies involved in the execution of the warrant at Plaintiffs' home.

Moreover, it is undisputed that the deputies involved in this incident were certified peace officers at the time and had in fact received extensive training meeting or exceeding the Texas Commission on Law Enforcement Officer Standards and Education (TCLEOSE) training requirements. The courses detailed in the officers' training records include courses in, among other areas, the use of force and arrest, search and seizure. Plaintiffs offer no evidence to show that the training was inadequate. *Benavides v. County of Wilson*, 955 F.2d 968, 973 (5th Cir. 1992) (affirming summary judgment where officers had completed state mandated training). Plaintiffs' claim boils down to an unsupported allegation that if the officers had received more training in the use of force or methods to avoid unlawful searches, the incident complained of here would not have occurred. The Supreme Court rejected such a claim in *Harris*, 489 U.S. at 391, holding that it will not "suffice to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct."

Plaintiffs' evidence simply does not substantiate a finding that Navarro County failed to train or implemented a policy that was so deficient that it was a repudiation of Plaintiffs' constitutional rights and was the moving force behind the constitutional violation Plaintiffs allege. Therefore, the court finds that Plaintiffs have failed to proffer evidence sufficient to

establish a viable claim for liability against Navarro County.[4]

For the foregoing reasons it is ordered that Defendants' motion for summary judgment is granted with respect to:

1. Plaintiffs' claim against Defendant Elmer Tanner, individually, for using excessive force in Plaintiffs' arrests; and

2. Plaintiffs' claim against Navarro County.

It is further ordered that Defendant Tanner's motion for summary judgment with respect to Plaintiffs' action against him, individually, for illegal search and seizure is denied.

Signed this 3rd day of October, 2007.

*[signature: Wm. F. Sanderson, Jr.]*

_____
Wm. F. Sanderson Jr.
UNITED STATES MAGISTRATE JUDGE

---

[4] Plaintiffs' purported claim against Navarro County for "ratification" is nothing more than a restatement of their inadequate training claim and, therefore, must also be dismissed.